# York Haven Water & Power Company *v.* American Phosphorus Company, Appellant.

*Contracts—Ambiguity—Evidence—Parol evidence—Fraud, accident, mistake.*

1. In the absence of fraud or mistake, clearly proven, parol evidence cannot be introduced to vary, reform or in any way affect a written agreement.

2. Where a written contract in plain and explicit terms provides for monthly payments for electric power furnished, and that the amount of each monthly payment shall consist of a charge for power and in addition thereto a charge for service, when not used, there is no ambiguity as to payments for power justifying the admission of evidence of letters and negotiations preceding the written contract to explain an alleged ambiguity as to what rates and deductions are to be made under a provision of the contract reading: "The Power Company will not make any rebates or deductions in any of its bills for less than 250 H. P. as a minimum power to be used ten months in each year."

Argued May 18, 1910. Appeal, No. 141, Jan. T., 1910, by defendant, from judgment of C. P. York Co., Aug. T., 1909, No. 120, on verdict for plaintiff in case of York Haven Water & Power Company v. American Phosphorus Company. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Assumpsit for furnishing electric power. Verdict and judgment for plaintiff for $2,829.85.

BITTENGER, P. J., in refusing a new trial handed down the following opinion:

The motion for a new trial is based on the rejection by the court of defendant's offers of evidence to explain ambiguity alleged to exist in the contract between the parties, for electric power furnished by the plaintiff to the defendant, at its manufactory near the borough of York Haven, in this county; and upon which contract this suit

is founded. The evidence offered was letters dated and written and negotiations before the execution of this contract.

The material section of the said agreement in evidence is the third, as follows:

"Third. Party of the second part shall pay for such electrical power during the supply thereof, monthly, on the tenth day of each month in each year. Such payment shall be made at the office of the Power Company in the City of New York, or such other place as the Power Company may direct, and the amount of each monthly payment shall consist of a charge for power and in addition thereto, when not used a charge for service. These charges shall be determined as follows:

"Charge for service.—For each kilowatt of the maximum kilowatt capacity which the Power Company herein agrees to install and to keep available for the use of the Phosphorus Company, the Phosphorus Company shall pay one dollar per month for kilowatt capacity installed as a minimum charge, whether current is used or not. It being distinctly understood that the Power Company will not make any rebates or deductions in any of its bills for less than 250 H. P. as a minimum power to be used ten months in each year during the period of this contract, and during the period of 60 days of shut down, the Phosphorus Company agrees to pay 250 dollars per month during such stoppage or shut down. That is to say the Phosphorus Company agrees to pay for 250 H. P. ten months per year whether current is used or not, 24 hours per day, 7 days per week, at full rate of $35.00 per year per horse power, and if plant is shut down for full sixty days $250.00 as a minimum for the two remaining months of the year.

"Charge for power.—For electrical units (K. W. Hours or H. P. Hours) actually used by the party of the second part, shall be based as recorded by the standard kilowatt hour meters installed by the Power Company, payment shall be made for this contract at the rate of $35.00

per year per horse power; 746 watts equal one horse power."

The contention of the defendant's counsel that the provision in this section as follows: "It being distinctly understood that the Power Company will not make any rebates or deductions in any of its bills for less than 250 H. P. as a minimum power to be used ten months in each year during the period of this contract, and during the period of 60 days of shut down, the Phosphorus Company agrees to pay 250 dollars per month during such stoppages or shut downs. That is to say the Phosphorus Company agrees to pay for 250 H. P. ten months per year whether current is used or not, 24 hours per day, 7 days per week, at full rate of $35.00 per year per horse power, and if plant is shut down for full sixty days $250 as a minimum for the remaining months of the year," provides for an adjustment at the end of the year and the return to the defendant of all sums paid on monthly payments, made during the year, in excess of the minimum rate of charge expressed in the agreement. Because the agreement in the section referred to, provides that "the Power Company will not make any rebates or deductions in any of its bills for less than 250 H. P. as a minimum power to be used ten months in each year during the period of this contract, and during the period of 60 days of shut down the Phosphorus Company agrees to pay 250 dollars per month during such stoppage or shut downs," it is strenuously argued that the Power Company has bound itself in terms, to make rebates and deductions; and that not having provided what rebates and deductions are to be made or when, there is an ambiguity, which the defendant has a right to explain, by the letters and conversations offered, to be an adjustment and repayment to the defendant at the end of each year of all moneys paid the plaintiff for power in excess of the minimum rates.

The contract plainly provides for monthly payment by the defendant to the plaintiff for power furnished by the

plaintiff to defendant, on the tenth day of each month, and the amount of each monthly payment shall consist of a charge for power, and in addition thereto, when not used, a charge for service. It then provides how the said charge for power shall be determined.

The agreement, then, in plain and explicit terms, expresses the intention of the parties as to monthly settlement and payment. It nowhere provides for any rebates or deductions, or by any language raises any ambiguity in regard to the monthly payments for the power used for such month.

There is no ambiguity to explain. We could discover none at the trial nor can we discover any now. Instead of the testimony explaining an ambiguity in the agreement its effect could only have been to add and vary the written agreement, entered into by the parties.

It was not competent to do this. The parties are held to have merged previous conversations and negotiations in their written agreement, and in the absence of fraud or mistake, clearly proven, parol evidence cannot be introduced to vary, reform, or in any way effect their written agreement. This is too well established to require the citation of any of the numerous decisions to this effect by the Supreme and Superior Courts of the commonwealth.

After careful consideration we have found no error in the disposition of the case, requiring a new trial.

And now, April 6, 1910, the motion and rule for a new trial are overruled and discharged at the costs of the defendant.

*Errors assigned* were various rulings on evidence and instructions.

*Henry C. Niles*, with him *Charles H. Howson* and *M. S. Niles*, for appellant.

*V. K. Keesey*, with him *J. S. Black*, for appellee.

PER CURIAM, July 1, 1910:

The judgment is affirmed on the opinion of the learned president judge of the common pleas, discharging the rule for a new trial.